**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**GREGORY HOLT, ADC # 129616**
**also known as Abdul Maalik Muhammad**                                   **PLAINTIFF**

**v.**                                    **Case No. 4:22-cv-00605-KGB**

**DEPARTMENT OF JUSTICE**                                    **DEFENDANT**

<u>**OPINION AND ORDER**</u>

Before the Court are defendant Department of Justice's ("DOJ") motion to extend time
(Dkt. No. 22) and a motion for summary judgment (Dkt. No. 26).  For the following reasons, the
Court grants the motion to extend time, considers the DOJ's motion for summary judgment timely
filed, and grants the DOJ's motion for summary judgment (Dkt. Nos. 22; 26).

**I.**      **Motion To Extend Time**

On November 1, 2023, the DOJ filed its motion to extend time (Dkt. No. 22).  The DOJ
requested up to, and including, November 22, 2023, to file its motion for summary judgment
because it required additional time to gather information regarding the response of the Federal
Bureau of Investigation ("FBI") to plaintiff Gregory Holt's requests (*Id.*, ¶¶ 3–4).  On November
2, 2023, the Clerk of Court filed a deficiency letter noting that the motion to extend time did not
contain a statement that the movant contacted the adverse party regarding the motion in accordance
with Rule 6.2(b) of the Local Rules of the United States District Court for the Eastern and Western
Districts of Arkansas (Dkt. No. 23).  The Court notes that the DOJ filed an updated version to
correct the deficiency (Dkt. No. 22-1).

On November 8, 2023, Mr. Holt filed a response in opposition to the motion in which he
challenged the DOJ's assertion that it needed additional time to gather information (Dkt. No. 24,
¶¶ 3–4).  Mr. Holt asserted that he had not received the document that caused him to file the

litigation and that the DOJ's motion was not made in good faith (*Id.*, ¶¶ 5, 7).  Additionally, Mr. Holt noted the deficiency letter and stated that the DOJ's motion should be denied, even if the DOJ cured the deficiency (*Id.*, ¶ 8).

The DOJ replied on November 15, 2023, stating that the additional time sought by the DOJ was "required to fully explain the bases for its various responses to [Mr. Holt's] broad request, and the extension sought [wa]s not for the purpose of delay." (Dkt. No. 25, ¶ 4).  On November 24, 2023, Mr. Holt responded to the DOJ's reply, renewing his objections (Dkt. No. 30).  The DOJ filed its motion for summary judgment on November 22, 2023 (Dkt. No. 26).

For good cause shown, the Court grants the DOJ's motion to extend time (Dkt. No. 22). The Court extends the time to file a motion for summary judgment up to, and including, November 22, 2023.  The DOJ's motion for summary judgment is timely filed (Dkt. No. 26).

## II.    Motion For Summary Judgment

Mr. Holt commenced this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, on June 30, 2023 (Dkt. No. 2).  Through his complaint, Mr. Holt seeks "the disclosure and release of agency records pertaining to information that the Federal Bureau of Investigation (FBI) supplied to Jacob Higgins, who is the Security Threat and Terrorist Group (STTG) Coordinator at the Arkansas Department of Correction." (*Id.*, at 1–2).  Mr. Holt further states that:

> This information led directly to Plaintiff being placed in an STTG file, which is the subject of another complaint pending in the Eastern District of Arkansas.  (See Holt [v.] Higgins, Case No. 4:21-cv-01226-JM-JTR, U.S.D.C., E.D. Ark.)  These records were improperly withheld from the Plaintiff by [the DOJ] and its component, [the FBI].

(*Id.*, at 2).  On November 22, 2023, the DOJ filed its motion for summary judgment, along with a statement of facts and a brief in support (Dkt. Nos. 26; 27; 28).  On November 27, 2023, the DOJ filed a motion for leave to file a supplemental declaration for *ex parte in camera* review, seeking

2

to provide the Court with additional information to demonstrate that the DOJ met its burden under the FOIA (Dkt. No. 32).  On March 29, 2024, Mr. Holt filed his response in opposition to the motion for summary judgment, statement of materially disputed facts, and response to the DOJ's motion for leave to file supplemental declaration for *ex parte in camera* review (Dkt. Nos. 37; 38; 39).  The Court granted the DOJ's request for leave to file a supplemental declaration for *ex parte in camera* review (Dkt. No. 41).

### A.    Factual Background

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas, the DOJ filed a statement of undisputed facts along with its motion for summary judgment (Dkt. No. 27).  Under Rule 56.1, all material facts set forth in the statement filed by the moving party shall be deemed admitted unless controverted by the statement filed by the non-moving party.  Failure to support or address properly the moving party's assertion of fact can result in the fact being considered as undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2).  Mr. Holt filed a statement of materially disputed facts (Dkt. No. 37).  The Court understands Mr. Holt to agree with the facts as outlined in the DOJ's statement of undisputed facts, and incorporates the DOJ's statement of undisputed facts, with the following exceptions:

> The DOJ states:
>
> The FBI has determined that intelligence sources and methods would be revealed if any of the withheld information is disclosed to plaintiff.  *Id.* ¶ 49.  Accordingly, information was withheld in part from documents identified as FBI (22-CV-065)-224, 230, 232, 245-53, 290-93, 300-04, 386-87.  See Index, Exhibit Q to Seidel Decl., Ex. 1.

(Dkt. No. 27, ¶ 46).  Mr. Holt replies:  "The intelligence sources and methods exemption claimed by the Defendant far exceed that allowed by Congress and the FOIA.  Further, this exemption is

null and void due to Plaintiff's knowledge of these sources." (Dkt. No. 38, at 1–2 (citing Dkt. No. 27, ¶ 46)).

The DOJ states:

> In Exemption Category (b)(5)-1, the FBI protected privileged, deliberative information on four pages. *Id.* ¶ 53. The deliberative process privilege protects the internal deliberations of the government by insulating recommendations, analyses, opinions, and other non-factual information comprising the decision-making process. *Id.* In turn, Exemption 5 allows for the withholding of such privileged material – i.e., material that contains, or was prepared in connection with the formulation of, opinions, advice, evaluations, deliberations, policies, proposals, conclusions, or recommendations. *Id.* The privilege also protects records and information that if disclosed, would reveal the agency's collection of multitudinous facts, and the sorting, evaluation, and analysis of those facts in order to make recommendations or reach a final agency decision. *Id.* Exemption 5, when asserted in conjunction with the deliberative process privilege, is predicated on the recognition that release of this privileged information would stifle the agency's decision-making process. *Id.* Furthermore, exempting such documents from disclosure also protects against public confusion that might result from preliminary disclosure of opinions and information that do not, in fact, reflect the final views of the FBI. *Id.* The exemption and privilege together protect not only documents but also the integrity of the deliberative process itself where exposure of the process would result in harm. *Id.* The FBI invokes Exemption 5 and the deliberative process privilege because FBI employees would hesitate to offer their candid and conscientious opinions to supervisors or coworkers if they knew that their opinions of the moment might be made a matter of public record at some future date, and because such self-censorship would, in turn, degrade the quality of agency decisions by depriving the decision-makers of fully-explored options developed from robust debate. *Id.*

(Dkt. No. 27, ¶ 49). Mr. Holt responds: "Exemption 5 was wrongly applied to Plaintiff pursuant to the deliberative process privilege." (Dkt. No. 38, at 2) (citing Dkt. No. 27, ¶ 49)).

The DOJ states:

> The FBI relied on Exemption 5 and the deliberative process privilege, in conjunction with attorney-client privilege to protect the opinion of a DOJ Assistant United States Attorney ("AUSA"), and the associated discussion between the AUSA and the investigative FBI SA. *Id.* ¶ 54. This opinion and discussion reflected intra-agency deliberations prior to reaching a final agency decision. *Id.* The FBI also relied on Exemption 5 and the [sic] to protect deliberative draft

investigative interview notes. *Id.* The draft interview notes reflected deliberations integral to reaching final agency decisions regarding interview documentation. *Id.* Additionally, in compliance with the FOIA Improvement Act of 2016, this material was created less than 25 years before the submission of plaintiff's request. *Id.*

(Dkt. No. 27, ¶ 50). Mr. Holt responds: "Exemption 5 was wrongly applied to Plaintiff pursuant to the attorney-client privilege." (Dkt. No. 38, at 2) (citing Dkt. No. 27, ¶ 50)).

The DOJ states:

The FBI protected a confidential communication between the FBI and DOJ counsel and an FBI employee (their client), that reflect the seeking and providing of legal advice. *Id.* ¶ 60. Specifically, the FBI withheld the opinion of a DOJ AUSA and the associated discussion between the AUSA and the investigative FBI [Special Agent ("SA")] regarding plaintiff's sentence and parole. *Id.* The communications between clients and attorneys were made in confidence, were not shared with or circulated to individuals outside the attorney-client relationship, and were made for the purpose of securing legal advice in relation to government legal positions. *Id.* Release of this information would call into question the FBI's commitment to withhold confidential information shared between agency clients and attorneys and could dissuade agency attorneys and clients from fully sharing such information, and endanger agency attorneys' ability to provide the best possible legal representation of their clients. *Id.* Furthermore, it would provide advantage to individuals seeking legal action against the government and/or those targeted for prosecution by the government. *Id.* It would provide information traditionally privileged in a legal context and disrupt the adversarial process of litigation by providing access to information related to the government's potential legal strategies regarding sentencing and parole. *Id.* Accordingly, the FBI properly withheld these privileged communications pursuant to Exemption 5. *Id.*

(Dkt. No. 27, ¶ 53). Mr. Holt responds: "Defendant has not shown that any legal counsel was provided to any specific client. The attorney and client were never identified." (Dkt. No. 38, at 2) (citing Dkt. No. 27, ¶ 53)).

The DOJ states:

Before an agency can invoke any of the harms enumerated in Exemption (b)(7), such as the unwarranted invasion of personal privacy, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. *Id.* ¶ 61. Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations

(AGG-DOM) and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. *Id.* Under this investigative authority, the responsive records herein were compiled to document the FBI's investigation of Gregory Houston Holt for potential violations of terrorist statutes. *Id.* Considering these records were compiled to document the FBI's investigation of possible bomb threats to military recruiting stations and a police station, and a plot to harm United States government officials, the FBI determined they were compiled for law enforcement purposes. *Id.*

(Dkt. No. 27, ¶ 55). Mr. Holt responds: "Exemptions 7(C) and 7(E) were wrongly applied to the Plaintiff." (Dkt. No. 38, at 2) (citing Dkt. No. 27, ¶ 55).

Finally, Mr. Holt further states that the DOJ "has not turned over the e-mail sought" and that he "believes that the facts in dispute are the policies and practices of the FBI." (*Id.* at 3).

## B.  Legal Standard

Summary judgment is appropriate if there is no genuine issue of material fact for trial. *UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56). Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In ruling on a motion for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'" *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923-24 (8th Cir. 2004) (internal citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Reg'l Med. Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

### C.    Analysis

In a FOIA case, summary judgment is available to a defendant agency where "the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir.1985).  An agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements."  *Id.* at 1382–83 (quoting *Nat'l Cable Television Ass'n, Inc. v. F. C. C.*, 479 F.2d 183, 186 (D.C. Cir. 1973)).  "The adequacy of an agency's search for requested documents is judged by a standard of reasonableness, i.e., 'the agency must show beyond material doubt. . . that it has conducted a search reasonably calculated

to uncover all relevant documents.'" *Id.* at 1383 (quoting *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).  The reasonableness of the search can be proved through affidavits of agency officials that are detailed, nonconclusory, and submitted in good faith.  *Id.*  Moreover, it was the intent of Congress that such agency affidavits "be accorded substantial weight in national-security cases."  *Id.*

Vaughn indices can be used to help determine whether an agency has met its burden. *Missouri Coal. for Env't Found. v. U.S. Army Corps of Engineers*, 542 F.3d 1204, 1209 (8th Cir. 2008).  A Vaughn index's purpose is twofold.  "First, to ensure an 'effectively helpless' party's right to information 'is not submerged beneath governmental obfuscation and mischaracterization' and second, to 'permit the court system effectively and efficiently to evaluate the factual nature of disputed information.'"  *Id.* (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)).  An adequate Vaughn index:

> provides a specific factual description of each document sought by the FOIA requester.  Specifically, such an index includes a general description of each document's contents, including information about the document's creation, such as date, time, and place.  For each document, the exemption claimed by the government is identified, and an explanation as to why the exemption applies to the document in question is provided.

*Missouri Coal*, 542 F.3d at 1209–10.  An index can be considered in conjunction with affidavits to detail why each purported exemption applies to the documents in question.  *Id.* at 1210.

Mr. Holt emphasizes one document, an email purportedly sent to STTG Higgins, and Mr. Holt seeks justification for why the email was not disclosed pursuant to his FOIA requests (Dkt. No. 27-3, at 112-13).  However, that is not the standard for an agency seeking summary judgment in a FOIA case.  An agency must show that its search for the documents was reasonably calculated to locate the requested documents.  *Miller*, 779 F.2d at 1383 (quoting *Weisberg*, 705 F.2d at 1351). In support of its argument that it conducted an adequate search for the documents, the FBI

submitted an exemption application index which includes a summary of FOIA exemption justification categories, a description of FBI document types, a description of each document, the FOIA exemption claimed, if any, and whether the document was disclosed (Dkt. No. 27-3). Additionally, the FBI offered the declaration of Michael G. Seidel, the section chief of the record/information dissemination sections ("RIDS"), information management division ("IMD"), of the FBI in which Mr. Seidel provides the FBI's justification for withholding the requested information under the Privacy Act and FOIA exemptions (Dkt. No. 27-3, ¶¶ 1, 4). The Court addresses each of the FBI's claimed FOIA exemptions and Mr. Holt's corresponding objections in turn.

### 1.   Privacy Act Exemption (j)(2)

The Privacy Act exempts the disclosure of records maintained by an agency that has the principal function of law enforcement. 5 U.S.C. § 552(a)(j)(2). The FBI is an agency that is required "to investigate violations of law within its investigative jurisdiction and collect[] information from a wide variety of sources." 63 Fed. Reg. 8671, 8684 (Feb. 20, 1998). The FBI maintains its records in the Central Records System ("CRS") (Dkt. No. 28, at 9). The FBI's law enforcement records that are maintained in its CRS are exempted from disclosure under the Privacy Act. 63 Fed. Reg. 8671, 8684 (Feb. 20, 1998).

The FBI located Mr. Holt's requested records through a search of its CRS (Dkt. No. 27-3, ¶ 30). In accordance with the records being exempt from disclosure under the Privacy Act, the FBI withheld the requested documents (*Id.*). Examining the record evidence with all reasonable inferences drawn in favor of Mr. Holt, the Court concludes that the FBI properly denied Mr. Holt's request for documents under the Privacy Act.

### 2.   FOIA Exemption 1

9

FOIA exemption 1 exempts the disclosure of records that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1)(A)-(B).  Executive Order (E.O.) 13526 is the applicable executive order governing national security, and it outlines a "uniform system for classifying, safeguarding, and declassifying national security information, including information relating to defense against transnational terrorism."  Exec. Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009).

Pursuant to the Executive Order:

Section 1.1. Classification Standards. (a) Information may be originally classified under the terms of this order only if all of the following conditions are met:

(1) an original classification authority is classifying the information;

(2) the information is owned by, produced by or for, or is under the control of the United States Government;

(3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and

(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 13526, 75 Fed. Reg. 707 (December 29, 2009).  In FOIA cases involving issues of national security, courts defer to the expertise of the agency.  *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009).  "If an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise" then courts should not question the agency's expertise.  *Id.*

Mr. Holt claims that the FBI used exemption 1 to withhold the e-mail that he seeks and that the FBI's purported justification for the exemption is "conclusory and it leaves this court and the plaintiffs to speculate as to what national security interests are implicated by the email." (Dkt. No. 37, at 84–85). The DOJ maintains that the FBI did not use exemption 1 to withhold the e-mail Mr. Holt seeks; rather, the FBI withheld classified information on two electronic communications concerning detailed intelligence activity (Dkt. No. 45, at 10).

Mr. Seidel determined that the information that the FBI withheld under exemption 1 "is under the control of the United States government, is classified and requires a classification marking at the 'Secret' level since the unauthorized disclosure of this information reasonably could be expected to cause damage, serious damage, or exceptionally grave damage to national security." (Dkt. No. 27-3, ¶ 38) (citing Exec. Order No. 13526, 75 Fed. Reg. 707 (December 29, 2009)). Mr. Seidel further noted that the records discussed information pertaining to the following categories that are protected by the Executive Order: (1) intelligence activities (including covert action); (2) intelligence sources or methods; or (3) cryptology (*Id.*, ¶ 40). Specifically, Mr. Seidel identified that the requested records contained information "concerning the character and title of the case for a specific type of intelligence activity directed at specific targets of national security interest" and the "detailed intelligence activity information gathered or compiled by the FBI on a specific individual organization of national security interest." (Dkt. No. 27-3, ¶¶ 44–45). Mr. Seidel concluded that disclosure of this information would enable hostile entities to "develop countermeasures which would, in turn, severely disrupt the FBI's intelligence gathering capabilities." (*Id.*, ¶ 42).

In sum, the FBI outlined in detail why Executive Order 13526 applies, how the requested information was classified, and the harm that disclosure of the information would pose to national

security.  Mr. Holt bases his argument on the wrongful application of this exemption to a specific document, an email, but in the absence of any offered evidence, Mr. Holt has not established that there is a genuine issue of material fact regarding how the FBI applied exemption 1 to the requested information.  The FBI properly applied exemption 1.

### 3.        FOIA Exemption 3

Under exemption 3, records are exempt from disclosure if they are specifically exempted from disclosure by another statute, other than the FOIA, if that statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  Moreover, statutes enacted after the OPEN FOIA Act of 2009 must specifically cite to this paragraph of the FOIA exemptions to qualify under exemption 3.  5 U.S.C. § 552(b)(3). Determining whether exemption 3 can be invoked requires a two-pronged analysis.  *C.I.A. v. Sims*, 471 U.S. 159, 167 (1985).  First, Courts determine whether the statute in question is subject to a statutory exemption within the meaning of exemption 3.  *Id.*  Second, courts consider whether the information requested falls under the statute.  *Id.*

The FBI asserts that, pursuant to exemption 3, it can withhold information under the National Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA") (Dkt. No. 27-3, ¶ 47).  Mr. Holt disputes the applicability of the Act claiming that the FBI does not provide any dates or time periods of the documents and that he "does not believe that any of the documents contain classified information or that they qualify under the National Security Act."  (Dkt. No. 37, at 89).

Mr. Holt's argument fails because the Act does not require the agency to provide the time period of the documents.  The Act provides that the Director of National Intelligence ("DNI")

"shall protect, and shall establish and enforce policies to protect, intelligence sources and methods from unauthorized disclosure."  50 U.S.C. § 3024(i)(1).  Moreover, the Act requires that the DNI establish and implement requirements for classification, access and dissemination, and preparation of intelligence products.  50 U.S.C. § 3024(i)(1).  With this authority, the DNI promulgated the Intelligence Community Directive 700 that requires the intelligence community to protect "national intelligence and intelligence sources and methods and activities from unauthorized disclosure."  Director of National Intelligence Directive 700, Intelligence Community Directive (2012).  The FBI is one of the agencies comprising the intelligence community, and thus, pursuant to the DNI's directive, it must protect intelligence sources (Dkt. No. 27-3, ¶ 48).  The FBI claims that "intelligence sources and methods would be revealed if any of the withheld information is disclosed."  (*Id.*, ¶ 49).  Specifically, the FBI's Vaughn index identifies the documents, the page number, and whether the document was released or withheld pursuant to exemption 3.  Moreover, the FBI's index justifies withholding such records under exemption 3 for the "[p]rotection of [i]ntelligence [s]ources] and [m]ethods" pursuant to 50 U.S.C. § 3024(i)(1).  Because 50 U.S.C. § 3024(i)(1) constitutes a statutory exemption to disclosure under exemption 3, because the information sought is protected by the statute, and because Mr. Holt has failed to establish a disputed genuine issue of material fact regarding the applicability of this Act, the FBI has properly invoked exemption 3.

### 4.     FOIA Exemption 5

The FOIA exempts the disclosure of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested."  5 U.S.C. § 552(b)(5).  "To qualify, [for the

exemption] a document must thus satisfy two conditions:  its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

Agency means "'each authority of the Government of the United States,' § 551(1), and 'includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government. . . , or any independent regulatory agency.'"  *Id.* at 9 (quoting 5 U.S.C. § 552(f)).  Here, the records withheld under exemption 5 contain documents prepared by FBI Special Agent ("SA") and communications between the SA and DOJ AUSA, both of whom are employed by government agencies (Dkt. No. 27, ¶ 50).   Examining the record evidence with all reasonable inferences drawn in favor of Mr. Holt, the Court concludes that the FBI established that the source of the records in question is a government agency.

### i.        Deliberative Process Privilege

Under exemption 5, the deliberative process privilege "'protect[s] the decisionmaking processes of government agencies' and 'encourage[s] the frank discussion of legal and policy issues' by ensuring that agencies are not 'forced to operate in a fishbowl.'"  *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (quoting *Wolfe v. Dep't of Health & Hum. Servs.,* 839 F.2d 768, 773 (D.C. Cir. 1988)).  This privilege protects pre-decisional and deliberative materials. *Id.*  The FBI claims that the records pertaining to a deliberative discussion between the FBI SA and an AUSA were pre-decisional because the discussion was about "legal strategies regarding Plaintiff's violations, sentence, and parole" and because the information does not reflect the FBI's final decision (Dkt. No. 27-3, ¶ 55).  The FBI further withheld two sets of handwritten notes by an

FBI SA under the deliberative process privilege (Dkt. No. 28, at 18).  The FBI argues that the notes "include facts that are intertwined with the SA's impressions, thoughts, and judgments."  *Id.* Moreover, it claims such notes are deliberative and pre-decisional because "they precede the final writeup formally memorializing an interview."  (Dkt. No. 45, at 5).  Mr. Holt does not offer an argument as to why the discussion between the SA and AUSA and the handwritten notes are not exempt from disclosure under the deliberative process privilege.  Because the record undisputably reflects that the SA and AUSA's discussion about Mr. Holt and handwritten notes included the agency's legal strategies regarding Mr. Holt and were not the agency's final positions, a reasonable jury could conclude that the FBI properly invoked the deliberative process privilege.

### ii.      Attorney Client Privilege

The FOIA exemption 5 applies to all civil discovery privileges including the attorney-client privilege.  *Fams. for Freedom v. U.S. Customs & Border Prot.*, 837 F. Supp. 2d 287, 293 (S.D.N.Y. 2011).  The privilege protects confidential communications made for the purpose of receiving legal advice or services.  *Id.*  "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer."  *Tax Analysts v. I.R.S.*, 117 F.3d 607, 618 (D.C. Cir. 1997). The FBI claims that there was an attorney-client relationship between the DOJ AUSA and the FBI SA when they discussed Mr. Holt's sentence and parole in confidence (Dkt. No. 27, ¶ 53).  Mr. Holt's argument that the attorney-client privilege does not apply because the FBI did not identify who the client is and has not maintained that the records were confidential is unavailing (Dkt. No. 37, at 44–45).  In the absence of any evidence to the contrary, the record reflects that the FBI employee was the client and the AUSA the attorney; further, it reflects that the FBI SA and AUSA discussed the information at issue in confidence (Dkt. No. 27-3, ¶ 60).  Therefore, the FBI properly withheld the requested documents under the attorney-client privilege.

### 5.    FOIA Exemptions 6 And 7(C)[1]

Under the FOIA, "personnel and medical files and similar files" are exempt from disclosure when such disclosure would "constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Similarly, the FOIA exempts the disclosure of "records or information compiled for law enforcement purposes" when such disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

As a threshold matter, to invoke any exemption under 7, the agency bears the burden to establish that the sought after information was "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  "Courts determine whether the agency met its burden by review[ing] the adequacy of the affidavits and other evidence presented by the Government in support of its position." *Xanthopoulos v. Internal Revenue Serv.*, 35 F.4th 1135, 1138 (8th Cir. 2022) (internal quotations omitted).  The FBI contends that the records requested were compiled, pursuant to the FBI's investigatory authority, to document the FBI's investigation of Mr. Holt for "possible bomb threats to military recruiting stations and a police station, and a plot to harm United States government officials."  (Dkt. No. 27-3, ¶ 61).  In response, Mr. Holt claims that these records were released to other agencies that, in turn, released the same documents to Mr. Holt through a FOIA request, but he does not cite to any supporting evidence for this claim (Dkt. No. 37, at 53–54).  Even if such records were released to Mr. Holt by other agencies, this does not negate the fact that the records in question were compiled for law enforcement purposes as required by exemption 7(C).  Therefore, examining the record evidence with all reasonable inferences drawn in favor of Mr.

---

[1]   The FBI asserts that it is standard agency practice to assert exemptions 6 and 7(C) together, given that a similar analysis applies to the two.  The Court follows suit in analyzing exemptions 6 and 7(C) in conjunction.

Holt, the Court concludes that the FBI has met its burden that the records in question were compiled for law enforcement purposes.

Additionally, exemption 7(C) mandates the protection of citizens' privacy against uncontrolled disclosure. *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004). The information the FBI withheld under exemptions 6(C) and 7(C) includes "personal information about FBI employees, third parties interviewed by FBI, people of interest in the investigation, employees of other agencies involved in the investigation, victims, and local and state government professional staff." (Dkt. No. 45, at 6) (citing Dkt. 27-3, ¶¶ 62–77). The FBI argues that it withheld the requested information because disclosure would constitute an unwarranted invasion of personal privacy and because there is not a public interest that would outweigh the third parties' privacy interest (Dkt. No. 45, at 6). The FBI further posits that it "scrutinized [every piece of information requested] to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue." (Dkt. No. 27-3, ¶ 64).

Once privacy concerns are implicated, courts must balance these privacy interests against the public interest in disclosure. *Nat'l Archives*, 541 U.S. at 172.

> Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure. First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted.

*Id.* "'Public interest' in the context of Exemption 7(C) means an interest in [o]fficial information that sheds light on an agency's performance of its statutory duties, and contribute[s] significantly to public understanding of the operations or activities of the government." *Peltier v. F.B.I.,* 563 F.3d 754, 762–63 (8th Cir. 2009) (internal citations omitted). "[A] prisoner may not override

legitimate privacy interests recognized in Exemption 7(C) simply by pointing to the public's interest in fair criminal trials or the even-handed administration of justice." *Id.* at 764.

Mr. Holt claims that there is a public interest in disclosure because "Plaintiff has been tarred and feather by the Defendant as a 'terrorist' simply for espousing unpopular ideas." (Dkt. No. 37, at 57).  Mr. Holt further claims that he believes he has a right to challenge the credibility of any third parties who cooperated in the investigation and the identity of the agent from the Louisiana FBI field office who supplied the information that resulted in Mr. Holt being placed in an STTG file (*Id.* at 58–59).

The FBI claims that Mr. Holt does not assert any public interest for the information, but rather, he requests it for personal reasons (Dkt. No. 45, at 7).  Examining the record evidence with all reasonable inferences drawn in favor of Mr. Holt, the Court agrees with the FBI that Mr. Holt does not advance a public interest in disclosure sufficient to satisfy that required by the exemption. Therefore, Mr. Holt has not adequately asserted a public interest that outweighs the privacy interests of the individuals whose personal information is contained in the documents at issue sufficient to warrant disclosure.

### 6.    FOIA Exemption 7(D)

The FOIA exempts the disclosure of records that "could reasonably be expected to disclose the identity of a confidential source."  5 U.S.C. § 552(b)(7)(D).  A source is "confidential" if the source disclosed the information to the agency under an express or inferred assurance of confidentiality.  *Williams v. F.B.I.,* 69 F.3d 1155, 1159 (D.C. Cir. 1995).  The FBI invoked exemption 7(D) to withhold the disclosure of documents that contain the identity and information provided by three categories of confidential sources:  (1) third parties who had an inferred grant of confidentiality; (2) third parties who had an express grant of confidentiality; and (3) local law

enforcement personnel who had an implied assurance of confidentiality (Dkt. No. 27-3, ¶¶ 81, 84, 87).  The FBI argues that assuring confidentiality to all the categories of informants is important to the Agency's functioning because "when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources." (Dkt. No. 27-3, at 40).

Mr. Holt claims that the FBI wrongly applied exemption 7(D) "to the email at issue" because the FBI's "Vaughn index does not state with specificity this exemption regarding the e-mail." (Dkt. No. 37, at 62–63).  A Vaughn index is not required but can be used to determine the reasonableness of an agency's claimed FOIA exemptions.  *Missouri Coal*, 542 F.3d at 1209.  Further, an agency's Vaughn index can be considered in tandem with affidavits from agency officials detailing a description of the documents at issue and the reason one of the FOIA exemptions applies.  *Id.*  Here, the FBI provided a Vaughn index outlining the exemption justification categories, a description of FBI document types, a description of each document, the FOIA exemption claimed, if any, and whether or not the document was disclosed (Dkt. No. 27-3, at 130–141).  Additionally, the FBI provided the affidavit of Mr. Seidel who explained in detail the purported reasons the FBI exempted the records from disclosure under exemption 7(D) (Dkt. No 27-3, ¶¶ 79–88).  Examining the record evidence with all reasonable inferences drawn in favor of Mr. Holt, the Court concludes that the FBI properly withheld documents under exemption 7(D).

### 7.      FOIA Exemption 7(E)

The FOIA exempts disclosure of "records or information compiled for law enforcement purposes" to the extent that the production of such records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  The agency has the burden to show that

the material was compiled for law enforcement purposes. "If the agency's description of the withheld material 'adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position.'" *Xanthopoulos*, 35 F.4th at 1138 (quoting *Cox v. U.S. Dep't of Just.*, 576 F.2d 1302 (8th Cir. 1978)).

The FBI asserts that it withheld documents under exemption 7(E), (Dkt. No. 27-3, ¶¶ 89–109), "to protect the integrity and effectiveness of FBI's investigative techniques so criminals cannot discover them and use them to circumvent investigation or avoid detection." (Dkt. No. 45, at 3–4). The information withheld under this exemption includes "FBI file numbers, identities of squads and divisions, secure fax and telephone numbers, methods of information collection and analysis, investigative techniques and capabilities, non-public coordination with other government agencies, and criteria used to determine source suitability." (*Id.*, at 3 (*see* Dkt. No. 27-3, ¶¶ 93, 97, 99, 100–08)). Mr. Holt contends that the FBI withheld content, including an email sent to former STTG coordinator Jacob Higgins "that described the plaintiff as a 'radicalized, jihadist,'" that does not fall under the "specialized, non-public techniques or procedures requirement" of 7(E) (Dkt. No. 37, at 28–29). Mr. Holt further posits that "[a]lthough the FBI is a law enforcement agency, not all FBI records are compiled for law enforcement purposes." (Dkt. No. 37, at 31). While the Court agrees that not all FBI records are compiled for law enforcement purposes, "there is no reason to believe that the FBI would have compiled information regarding [Mr. Holt] outside the context of a legitimate law-enforcement investigation.*" Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

Without any contrary record evidence cited by Mr. Holt, examining the record evidence with all reasonable inferences drawn in favor of Mr. Holt, the Court concludes that the FBI met its

burden to demonstrate that disclosure of the documents claimed exempt under 7(E) would disclose FBI techniques and procedures, and thus, the FBI properly withheld documents under exemption 7(E).

### 8.      Glomar Response

"[A]n agency may issue a *Glomar* response, *i.e.,* refuse to confirm or deny the existence or nonexistence of responsive records if the particular FOIA exemption at issue would itself preclude the acknowledgement of such documents." *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012).  A Glomar response is appropriate when "'to answer the FOIA inquiry would cause harm cognizable under' an applicable statutory exemption." *Id.* (quoting *Wolf,* 473 at 374).  Regarding Glomar responses, "courts may grant summary judgment on the basis of agency affidavits that contain 'reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Id.* (quoting *Gardels v. C. I. A.*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)).  The affidavit "must justify the Glomar response based on 'general exemption review standards established in non-Glomar cases.'" *Id.*  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Larson,* 565 F.3d at 862.

It is the FBI's standard practice to issue a Glomar response, "regardless of whether responsive records exist (i.e., including when the FBI does not possess responsive records)" to maintain the effectiveness of using such responses (Dkt. No. 27-3, ¶ 115).  The FBI posits that "[i]f the FBI invoked a Glomar response only when it possesses responsive records, the Glomar response would be interpreted as an admission that responsive records exist." (*Id.*, ¶ 118).  The FBI gave Mr. Holt "its standard Glomar response concerning unacknowledged intelligence records, watch list records, witness security program records, and records for incarcerated

individuals advising that it can neither confirm nor deny the existence of such records pursuant to FOIA Exemptions 1, 3, 7(D), and 7(F)." (Dkt. No. 28, at 43–44; *see also* Dkt. No. 27-3, at 90–91).

Mr. Holt claims that the FBI's Glomar response is unlawful because "acknowledging the existence or non-existence of records would not logically or plausibly reveal the specific facts the Defendants list" and that some of the documents in question are not confidential and have already been released by other agencies (Dkt. No. 37, at 68). Mr. Holt's augment fails because, "[i]n light of the substantial weight accorded agency assertions of potential harm" that could result by disclosing records exempt under exemptions 1, 3, 7(D), and 7(F), the agency has put forth plausible and logical justifications, as discussed previously, for invoking such exemptions. *See Wolf,* 473 F.3d at 376. It follows, the agency's Glomar response under those same exemptions is adequate.

### 9.    *In Camera* **Review**

The Eighth Circuit Court of Appeals has held that "in camera inspection should be limited as it is 'contrary to the traditional judicial role of deciding issues in an adversarial context upon evidence openly produced in court.'" *Missouri Coal,* at 1210 (citing *Barney v. Internal Revenue Serv*., 618 F.2d 1268, 1272 (8th Cir. 1980)). Even in instances when a party submits a "bare bones" Vaughn index, courts do not hold *in camera* review if the Vaughn index is accompanied by affidavits that adequately describe and provide support for the claimed exemptions. *Id.* "The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency." *Cox,* 576 F.2d at 1312 (citing *Weissman v. Cent. Intel. Agency*, 565 F.2d 692, 698 (D.C. Cir. 1977)).

The FBI asserts that *in camera* review is not warranted because it adequately described and supported its purported reasons for nondisclosure and because Mr. Holt has failed to point to any instance of bad faith on the FBI's part (Dkt. No. 45, at 12–13).  Mr. Holt relies on a Sixth Circuit Court of Appeals case, *Jones v. F.B.I.*, 41 F.3d 238 (6th Cir. 1994), to claim that *in camera* review is warranted because the FBI acted in bad faith regarding the activities underlying the documents at issue (Dkt. No. 37, at 98).  Specifically, Mr. Holt claims that his advocacy on behalf of Muslims "brought him into disfavor with both federal and state law enforcement agencies." (Dkt. No. 37, at 101).  However, the Eighth Circuit did not apply the *Jones* reasoning, and did not require *in camera* review, in a case where the plaintiff "point[ed] to nothing about the FBI's response to the instant FOIA requests that call[ed] into question the good faith of the agency."  *Peltier*, at 761.  Because the FBI's Vaughn index and supporting declarations adequately describe its reasons for non-disclosure and because Mr. Holt does not provide any record evidence of the FBI acting in bad faith, *in camera* review is not warranted.

### III.    Conclusion

For these reasons, the Court grants the DOJ's motion to extend time (Dkt. No. 22) and grants the DOJ's motion for summary judgment on Mr. Holt's FOIA request claim (Dkt. No. 26).  After construing the underlying facts and the inferences to be drawn from them in the light most favorable to the FOIA requester Mr. Holt, the Court concludes that the record evidence establishes the DOJ has fully discharged its obligations under FOIA.  Mr. Holt has failed to present evidence from which a jury might return a verdict in his favor on his FOIA claim.

It is so ordered this 24th day of September, 2024.

_Kristine G. Baker_
_____
Kristine G. Baker
Chief United States District Judge

23